## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## BOWLING GREEN DIVISION

**CIVIL ACTION NO. 1:11CV-00082-JHM**

**BRYAN DELL VAUGHAN**                                                            **PLAINTIFF**

**VS.**

**BERRY PLASTICS CORPORATION**                                  **DEFENDANT**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion by Defendant, Berry Plastics Corporation, for summary judgment [DN 38]. Fully briefed, this matter is ripe for decision.

### I. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The rule requires the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1).

"The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252. It is against this standard that the Court reviews the following facts.

## II.  BACKGROUND

Defendant, Berry Plastics, owns and operates over 70 manufacturing plants throughout North America and the world. Defendant manufactures pipelines, regular duct tape, and other tape at its Franklin, Kentucky, facility. Plaintiff, Bryan Dell Vaughan, was employed by the Defendant or its prior owners for over 25 years. Plaintiff's job required heavy lifting on a regular basis. Plaintiff and his co-worker, Larry Nolan, were responsible for cutting and removing rubber mass weighing around 50 lbs. each totaling over 8,000 pounds per person per day. (Bryan Vaughan Aff. at ¶ 4.) Plaintiff and Nolan took three breaks during an eight-hour shift. Plaintiff alleges that on July 10, 2010, he felt pain in his groin. He informed Nolan of his pain, pointing to the area that was hurting. Both Plaintiff and Nolan did not think it was a problem because they experience aches and pains all the time on the job. Plaintiff continued to work the remainder of his shift. Plaintiff was not scheduled to work on July 11, 2010. He worked a full shift on July 12, 2010. Plaintiff worked approximately four hours on July 13, 2010, leaving when the plant closed early. That day, Plaintiff visited his personal physician and learned that he sustained a work related injury on July 10, 2010, to his groin area.

On July 14, 2010, Plaintiff informed his supervisor, Bobby Latham, that he had injured himself at work and had been diagnosed by his physician with inguinal hernia for which surgery was needed. On July 14, 2010, Plaintiff completed and signed an accident report stating that he had been

injured on July 10 at approximately 1:00 p.m. Latham notified his supervisor, Kevin Lindsey, that Plaintiff had reported an injury. Plaintiff was suspended on that same day for failure to timely report the injury in violation of Critical Safety Behavior No. 1 which provides: "Report all accidents immediately (target 15 min.) to your supervisor, plant manager, HR manager, EHS manager, or any member of the management team, no matter how minor, but without exception before the end of the shift." (Critical Safety Behaviors ¶ 1; DN 23-1.) Plaintiff had completed a training program on the Critical Safety Behaviors on June 23, 2010. The Critical Safety Behavior form indicates that the employee agrees to "comply with the policies at all times" and recognizes that if the employee violates one of the Safety Rules of Critical Safety Behaviors, he "may receive disciplinary action up to and including termination." Plaintiff testified that he was unaware he was hurt or injured on July 10, 2010, when he felt pain.

Plaintiff's conduct was reviewed by company executives, including Plant Manager John Baker, Plant Human Resource Manager Rex Eaton, Division President Tom Salmon, Division Vice President Joel Plaas, Division Vice President of Human Resources Jeff Bennett, and Corporate Environmental Health and Safety Manger Mitch Williams. According to Defendant, given the company's strict policy concerning adherence to its Critical Safety Behaviors, company executives recommended that Plaintiff's employment be terminated because he failed to timely report his injury in violation of a Critical Safety Behavior. On July 20, 2010, Plaintiff was notified of his termination by Eaton.

The record reflects that three employees at the Franklin, Kentucky, plant who violated Critical Safety Behavior No. 4 for placing their hand inside a machine while the machine was operating and/or improperly attempting to unjam a machine were terminated for violating this safety

rule. However, there is no evidence that another employee has been terminated for violating Critical Safety Behavior No. 1.

As a result of his termination, Plaintiff filed this action against the Defendant asserting claims of retaliation under KRS §342.197 and §344.280. Plaintiff alleges that he was discharged in retaliation over the likelihood that he would file a claim for workers' compensation benefits. Defendant filed this motion for summary judgment arguing that (1) Plaintiff failed to state a prima facie case in his claim of retaliation under KRS §342.197; (2) Plaintiff cannot show that Defendant's legitimate, non-discriminatory reason for his termination was a pretext for retaliation; and (3) Plaintiff is not entitled to relief for retaliation under KRS §344.280 because he was not a member of a protected class. The Court considers these arguments in turn.

### III. DISCUSSION

#### A. Workers' Compensation Retaliation

Plaintiff claims that he was retaliated against over the likelihood that he would file a claim for workers' compensation benefits in violation of KRS §342.197. KRS §342.197(1) states: "No employee shall be harassed, coerced, discharged, or discriminated against in any manner whatsoever for filing and pursuing a lawful claim under this chapter." Kentucky courts apply a modified version of the McDonnell Douglas burden-shifting scheme to retaliation claims. Kentucky Center for the Arts v. Handley, 827 S.W.2d 697, 701 (Ky. Ct. App. 1991) (relying on McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)). To state a claim for workers' compensation retaliation under KRS §342.197, a plaintiff must establish a prima facie case by demonstrating that (1) he engaged in a protected activity, (2) the employer knew that the plaintiff had done so, (3) adverse employment action was taken, and (4) there was a causal connection between the protected activity and the

adverse employment action. Colorama, Inc. v. Johnson, 295 S.W.3d 148, 152 (Ky. Ct. App. 2009); Brooks v. Lexington–Fayette Urban County Housing Auth., 132 S.W.3d 790, 803 (Ky. 2004). The fourth element of this test requires a showing that the claim was a "'substantial and motivating factor but for which the employee would not have been discharged.'" Henderson v. Ardco, Inc., 247 F.3d 645, 654 (6th Cir. 2001) (quoting First Property Mgmt. Corp. v. Zarebidaki, 867 S.W.2d 185, 188 (Ky. 1993)). See also Chavez v. Dakkota Integrated Systems, LLC., 832 F. Supp. 2d 786, 800 (W.D. Ky. 2011).

"Once a plaintiff has established a *prima facie* case, the burden of production shifts to the employer to articulate a non-retaliatory reason for the adverse employment action." Gibson v. Solideal USA, Inc., 2011 WL 63612, *2 (W.D. Ky. Jan. 7, 2011)(citing Dollar General Partners v. Upchurch, 214 S.W.3d 910, 915–16 (Ky. Ct. App. 2006). "At that point, the burden of production shifts back to the plaintiff to prove by a preponderance of the evidence that the legitimate reasons offered by the employer were not its true reasons but were a mere pretext for unlawful retaliation." Id. Ultimately, the question is "whether Plaintiff has established that his pursuit of a workers' compensation claim was a substantial and motivating factor but for which the adverse employment actions would not have been taken." Hodge v. Dollar General, 2011 WL 3880486, *8 (E.D. Ky. Aug. 29, 2011)(citing First Property Mgmt. Corp., 867 S.W.2d at 188; Bishop v. Manpower, Inc. of Cent. Kentucky, 211 S.W.3d 71, 75 (Ky. Ct. App. 2006)("[I]f the employer articulates a legitimate, non-retaliatory reason for the decision, the employee must show that the discriminatory motive was a substantial and motivating factor behind the adverse employment action.")). Defendant maintains that Plaintiff has not raised a genuine issue of material fact as to his prima facie case or as to pretext.

Defendant concedes that Plaintiff is a member of a protected class and that termination qualifies as an adverse employment action. However, Defendant argues that Plaintiff failed to demonstrate that Defendant had knowledge of the protected activity or that there is any causal connection between his workers' compensation and his termination.

**1. Knowledge of Protected Activity**

Defendant maintains that Plaintiff cannot establish that the decision-makers at Berry Plastics had any knowledge of protected activity by Plaintiff at the time the decision was made to terminate Plaintiff's employment. Defendant argues that on July 14, 2010, Plaintiff did not request workers' compensation information, he did not mention filing a claim for workers' compensation, and he did not file a workers' compensation claim until August 31, 2010, well over a month after his termination. Defendant argues that the only mention by any of Defendant's managers concerning the topic of workers' compensation was when Eaton informed Plaintiff during the July 20, 2010, meeting that his discharge would not affect his entitlement to benefits.

First, the term "pursuing a lawful claim" pursuant to KRS §342.197 does not require that a formal claim be filed prior to the employee's termination. Overnite Transp. Co. v. Gaddis, 793 S.W.2d 129, 130-131 (Ky. Ct. App. 1990). "'A requirement that an actual filing of a claim is the only event which would trigger the statutory protection would frustrate the legislative intent evidenced in KRS 342.197. In the face of such a requirement, an employer could, upon receipt of any notice that an employee intended to file for workers' compensation benefits, fire the claimant and avoid the consequences of KRS 342.197 entirely.'" Unifirst Corp. v. Stewart, 2009 WL 960690, *5 (Ky. Ct. App. 2009)(quoting Overnite, 793 S.W.2d at 130-131)).

Second, the record reflects that upon learning that he had suffered an injury, Plaintiff

6

reported the work-related injury to Bobby Latham, Kevin Lindsey, and the plant nurse. Plaintiff presented a doctor's statement indicating that he had suffered an inguinal hernia for which surgery was needed. Plaintiff informed all three individuals that he sustained the injury on the job due to the heavy lifting required. The Plant Safety Director was informed of the work-related injury as well. Plaintiff filled out an accident report on July 14, 2010, in which Plaintiff stated that "while packing rubber to pans and pans to rubber I felt a pain in right groin area." (Accident Report). Clearly, management was aware that Plaintiff had suffered a work-related injury that required surgery, filed an accident report, visited the doctor, and presented a doctor's excuse.

The case relied upon by Defendant in support of its position that management was not aware of Plaintiff's pursuit of a workers' compensation claim is distinguishable. In Hall v. Hammond Transp., Inc., 2009 WL 3231392 (Ky. Ct. App. Oct. 9, 2009), Hall allegedly twisted his ankle on a Monday, worked four shifts, informed dispatch on Thursday that he had damaged the mirror of his tractor, and then called dispatch on Friday reporting that he needed to be off work that day because of his ankle. Id. at *1-2. The record reflects that Hall did not seek treatment for the ankle until over three weeks after the alleged injury and attempted to return to work two months after the alleged injury. Id. The defendant actually terminated Hall for the unsanitary condition of the cab of his tractor and failure to report the full extent of damage to the tractor he was driving. Id. at *2. When addressing Hall's retaliation claim, the Kentucky Court of Appeals noted that none of Hall's subsequent behavior supported any reasonable inference that the defendant knew he was pursuing workers' compensation benefits including Hall's failure to provide medical information to his employer or the employer's insurance carrier; his failure to communicate with the employer in any way; his failure to provide a medical excuse from work; and his failure to follow through by filing

7

a workers' compensation claim.  Id. at *7.

In contrast, in the present case, Plaintiff provided to Defendant documentation from Dr. Kelly Patterson that he needed inguinal hernia surgery; Plaintiff submitted documentation on July 14, 2010 that his injury was work-related because he was "packing rubber to pans and pans to rubber" when he felt the groin pain; he submitted an accident report to Defendant which was taken by the plant nurse, Angie Reed; and he submitted a work excuse from Dr. Patterson.  These actions demonstrate that Plaintiff was "pursuing a lawful workers' compensation claim."  Finally, unlike Hall, Plaintiff followed through by filing a workers' compensation lawsuit on August 31, 2010, obtaining medical benefits on April 4, 2011.  Plaintiff has presented sufficient evidence that Defendant knew of the protected activity.

### 2.  Causal Connection

Defendant also argues that Plaintiff failed to prove a causal connection between the protected activity and the adverse employment action.  According to the Kentucky Supreme Court, because there is often a lack of direct evidence, proof of a causal connection can be difficult and requires reliance on inference.

> In most cases, this requires proof that (1) the decision maker responsible for making the adverse decision was aware of the protected activity at the time that the adverse decision was made, and (2) there is a close temporal relationship between the protected activity and the adverse action.

Dollar General Partners, 214 S.W.3d at 915(quoting Brooks v. Lexington-Fayette Urban County Housing Authority, 132 S.W.3d 790, 804 (Ky. 2004)).  "'The sooner adverse action is taken after the protected activity, the stronger the implication that the protected activity caused the adverse action, particularly if no legitimate reason for the adverse action is evident.'"  Id. at 916 (quoting Kentucky Department of Corrections v. McCullough, 123 S.W.3d 130, 135 (Ky. 2003)).

In the present case, Plaintiff has presented sufficient evidence that Defendant knew of the protected activity. Furthermore, the same day Plaintiff reported the work-related injury he was suspended and five days later terminated. A close temporal relationship between the protected activity and the adverse action exists. Any argument to the contrary by Defendant is not credible. Accordingly, the Court finds that Plaintiff has stated a prima facie case of workers' compensation retaliation pursuant to KRS §342.197.

### 3. Substantial Motivating Factor

Defendant maintains that Plaintiff was suspended on July 14, 2010, and terminated on July 20, 2010, for failure to timely report the groin injury in violation of Critical Safety Behavior No. 1 which provides: "Report all accidents immediately (target 15 min.) to your supervisor, plant manager, HR manager, EHS manager, or any member of the management team, no matter how minor, but without exception before the end of the shift." (Critical Safety Behaviors ¶ 1; DN 23-1.)

While Defendant has offered an arguably non-workers' compensation-related reason for its termination of Plaintiff – that he violated a Critical Safety Behavior – the Supreme Court of Kentucky has held that an "employer is not free from liability simply because he offers proof he would have discharged the employee anyway, even absent the lawfully impermissible reason, so long as the jury believes the impermissible reason did in fact contribute to the discharge as one of the substantial motivating factors." First Property Mgmt, 867 S.W.2d at 188. See also Isham v. ABF Freight System, Inc., 2006 WL 2641398, *6 (Ky. Ct. App. 2006); Bullard v. Alcan Aluminum Corp., 113 Fed. Appx. 684, 690 (6th Cir. 2004). Plaintiff has set forth evidence that he experienced pain on July 10, 2010. He was not involved in an accident as indicated by the Critical Safety Behaviors. He was not aware of any injury. Both Plaintiff and Larry Nolan indicated that they suffered from

9

aches and pains daily given their job duties at Defendant's plant.  Plaintiff testified that once he discovered he was injured on July 13, 2010, after Dr. Kelly Patterson diagnosed Plaintiff with an inguinal hernia, he timely reported his injury to management.  Further, the record reflects that when the Plant reopened on July 14, 2010, Plaintiff went to Bobby Latham at 8:00 a.m. and completed an accident report.  Plaintiff consistently represented that he was not aware he was injured until he visited his doctor on July 13, 2010; therefore, he did not violate the Critical Safety Behavior No. 1 or did not fail to timely report his injury to Bobby Latham or Kevin Lindsey.  In fact, Defendant acknowledges that Plaintiff previously suffered at least two work-related injuries and reported them immediately to his supervisor suggesting to the Court that if Plaintiff had believed he was injured, he would have notified Defendant immediately.

The case relied upon by Defendant, <u>Bihl v. Griffin Indus.</u>, 2010 WL 3191783 (Ky. Ct. App. Aug. 13, 2010), is distinguishable from the present case.  In <u>Bihl</u>, the plaintiff cut his finger on a grease container at work.  Bihl experienced swelling and discomfort for approximately a month before he mentioned the cut to management.  He completed an accident report a month and half after the accident.  Bihl was terminated for failure to report "an accident or injury, no matter how slight" to his supervisor no later than 24 hours after occurrence." <u>Id.</u> at *1.  In the present case, Plaintiff had no visible sign of an injury and was not involved in an accident.  The Plaintiff merely experienced pain which is undisputed that both he and his co-worker, Larry Nolan, experienced on a daily basis.  Defendant agrees that not every ache and pain experienced by employees should be reported to management as an injury. Based on the facts offered by Plaintiff, and despite Defendant's proffered non-retaliatory reason, a reasonable jury could find that pursuit of a workers' compensation claim by Plaintiff was one of the substantial factors motivating the discharge decision.

For these reasons, the Court concludes that Plaintiff has submitted sufficient evidence of a genuine dispute of material fact as to whether Defendant's termination of Plaintiff was substantially motivated by his pursuit of a workers' compensation claim.

### B. KRS §344.280 Retaliation Claim

In his amended complaint, Plaintiff claims that he was subjected to retaliation in violation of KRS §344.280. That provision makes it unlawful for one or more persons "[t]o retaliate or discriminate in any manner against a person because he has opposed a practice declared unlawful by this chapter, or because he has made a charge, filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding or hearing under this chapter." KRS §344.280. "'Kentucky law does not support a wrongful termination claim in violation of KRS Chapter 344 for individuals who do not fall into a protected class.'" Isham, 2006 WL 2641398, *6 (citation omitted). Plaintiff states that he is not attempting to prove a retaliation claim under KRS §344.280. Accordingly, summary judgment on this claim is proper.

### IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion for summary judgment by Defendant, Berry Plastics Corporation, [DN 38] is **DENIED** as to Plaintiff's claim for violation of KRS §342.197 and **GRANTED** as to Plaintiff's claim for violation of KRS §344.280.

*[Signature]*

cc: counsel of record

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

January 22, 2013